## DURLACHER v. FRAZER.

CORPORATIONS — CONTRACTS — CHATTEL MORTGAGE BY CORPORATION TO SECURE DEBTS OF ITS INCORPORATOR AND STOCKHOLDER — FRAUDULENT CONVEYANCES.

1. Although one person owns or controls all the stock of a corporation, has conveyed to it all of his property, and as president, treasurer, and manager, is given complete control of its operations by its by-laws, nevertheless he and the company are legally two distinct persons, each having the right and power to own property, and contract debts, and each bound by his and its own obligations in regard thereto, as fully as if they were two distinct natural persons.

2. It is not, therefore, to be conclusively presumed that the company owes the debts of such person, from the fact that, though operating under a corporate name, he was in fact still conducting the same business which he had owned, as an individual; but it is a question of fact to be determined by the evidence.

3. Where one engaged in the mercantile business sold said business and all his property to a recently organized corporation; and the only writings which passed between him and the company were a warranty deed for his real estate, and a bill of sale for his personal property, containing no reservations, delivered by him to the company on the one hand, and certificates for all the capital stock of the company, stipulated to be fully paid, received by him from the company, on the other hand; and the par value of the capital stock was $33,000, and the total consideration expressed in the deed and bill of sale was $32,200. *Held*, that so far as the writings are concerned, they do not express or imply any contract upon the part of the company to pay the individual debts of its said grantor amounting to more than $22,000.

4.  In such case, to establish the existence of a verbal contract of the company to pay said individual debts, there must be proof of some expression upon the part of the debtor and some one representing the company, showing that the minds of the contracting parties, or their agents, met upon the proposition, and agreed.

5.  Where a merchant, heavily indebted, forms a corporation, and conveys to it his business and all his property — his real estate by warranty deed, and his personal property by bill of sale, without reservation — for an expressed aggregate consideration of $32,200, and receives in return all the shares of stock of the company of the par value of $33,000, stipulated to be fully paid; an unexpressed intention on the part of the said merchant to have his individual debts paid by the company and out of its resources, and the actual use by him of the company's funds to pay some of his debts, does not show, or amount to, a contract on the part of the company to assume or pay said individual debts.

6.  Where, afterward, such corporation, being embarrassed, and unable to pay its bills as they become due, and being pressed by some of its creditors, in pursuance of a resolution of its trustees, executed to plaintiff its note and a chattel mortgage upon its property to secure an indebtedness due her from said individual who had formed the company, conveyed to it his property, and controlled all its stock and managed its operations, which said indebtedness had been contracted and was in existence prior to the organization of the company. *Held*, that in the absence of a contract on the part of the company, when the transaction between said individual debtor and the company occurred, the chattel mortgage was void as against attaching creditors of the corporation, as having been given without consideration.

7.  Although part of the indebtedness secured by said note and mortgage consisted of $4,000.00, paid by the plaintiff—the mortgagee—to a bank, in payment of a note upon which she was originally surety for said individual debtor, and which said note had been renewed by the execution of a new note in the name of the company by the said original debtor as president and manager of the company, signed also by the plaintiff as surety; the execution of the new note by the company, as between plaintiff and creditors of the company, did not constitute an assumption of said indebtedness; the company having received no benefit from the execution of the note, and there being no injury to the plaintiff since she

merely paid off a debt for which she was already liable when the company was organized. The company not having contracted to pay the debts of its grantor and stockholder, its said note was without consideration as between plaintiff, the company, and the original debtor.

8.   A corporation can not give away its property, or transfer it, unless in good faith, for value, if its creditors would be left thereby unsecured.

[Decided December 17, 1898.   Commenced in District Court, January 29, 1897.]

ERROR to the District Court, Albany County, HON. CHARLES W. BRAMEL, *Judge.*

Replevin, by Hannah Durlacher, the holder of a chattel mortgage, against Charles C. Frazer, sheriff of Albany County, who held the goods included in the mortgage by virtue of writs of attachment issued at the suit of various creditors of the mortgagor.   Judgment for defendant, and plaintiff brought error.   The material facts are set forth in the opinion.

*C. E. Carpenter* and *John W. Lacey*, for plaintiff in error.

Insolvency is to be proven by facts from which the jury may draw the inference, and not by reputation and opinions.   Testimony of a witness, that in his opinion a party was insolvent, is not competent.   (Stewart v. McMurry, 82 Ala., 269; Lawson v. Orear, 7 id., 785; Bank v. Parker, 5 id., 731.)   As a general rule declarations of a vendor, after transfer and delivery of possession can not be given in evidence against the vendee.   (Wait on Fraudulent Conv., Sec: 278, 85 Mich., 380; 116 U. S., 161; 86 Cal., 241; 111 N. Y., 278; 32 S. C., 582; 113 Mass., 76; 30 Kan., 353; 37 id., 457.)   As against a mortgagee, evidence of declarations of the mortgagor long before the execution of the mortgage are incompetent.   (111 N. Y., 278.)   The creditor of an insolvent may secure himself, and thereby incidentally hinder and delay

other creditors, if he act in good faith, though the debtor may to his knowledge have had an ultimate fraudulent purpose. (Hamilton-Brown Shoe Co. v. Whitaker, 23 S. W., 520; Owens v. Clark, 15 id., 101; 53 Kan., 713; Reynolds v. Weinman, 25 S. W., 33; Werner v. Zierfuss, 29 Atl., 737; Sabin v. Columbia, Etc. Co., 25 Or., 15; Currie v. Bowman, 35 Pac., 848; Kilpatrick Etc. Co. v. McPheely, 37 Neb., 800; 57 N. J. L., 532; 6 Tex. Civ. App., 238; id., 665; 144 U. S., 585; 87 Mich., 481; 99 Ala., 100; 53 Mo. App., 196; 38 Ill. App., 438; 60 Mo. App., 530.) A new note with security taken in good faith as additional security upon another note of the same debtor does not increase the debts of the debtor, but in such case, payments upon the new note will also pro tanto, discharge the old debt. (International Trust Co. v. Union Cattle Co., 3 Wyo., 803.) The plaintiff should not have been required to prove the honest character of the entire debt and the absence of fraudulent intent. The burden of proof upon those matters rested upon defendant. The instructions were erroneous in disregarding this rule. (Wait on Fraud't Conv., 271.) The law does not require an insolvent debtor to stand on his strict legal rights, and refuse to pay or secure every debt to which he might successfully interpose some technical defense. He may lawfully secure such debts. (32 Kan., 73; 7 R. I., 481; 76 Ind., 195; 114 id., 144; 101 id., 334; Bump on Fraud't. Conv., 220; 71 Ind., 459; 38 Tex., 245; 63 Me., 326; 13 Md., 494; 71 Ala., 202; 44 N. Y., 107; 26 N. Y. Supp., 194; 33 Wis., 391; 13 S. E., 619; 23 Atl., 269; 8 N. Y. Supp., 139; 9 So., 541; 5 S. E., 480; 47 Minn., 95; 4 Denio, 439; 47 N. Y., 544; 29 Barb., 480; 9 Hun., 161; 25 N. Y. Supp., 542; 42 Pa., 529; 65 id., 89.)

The dealings between an agent and his principal is a matter between them alone. If the principal in good faith chooses to ratify a contract made by his agent with himself, no one else can complain, and the contract is then as binding as any other contract. The ratification may

be by acquiescence and acting upon the contract, by receiving and retaining the proceeds, or by any act which would ratify any other contract. (Mechem on Agency, 464; 21 Wall., 178; 105 Mass., 557.) A contract between a corporation and its officers is not void per se, but is merely voidable at the option of the corporation, if exercised in a reasonable time. (3 Thomp. on Corp., 4061; Thomas v. Ry. Co., 109 U. S., 522; Oil Co. v. Marbury, 91 id., 587; Gas Co. v. Berry, 113 id., 322; Leavenworth v. Ry. Co., 134 id., 688; Cornell v. Clark, 104 N. Y., 451; Stewart v. Ry. Co., 38 N. J. L., 505; Buell v. Buckingham, 16 Ia., 284; Crymble v. Mulvaney (Colo.), 40 Pac., 499; Kelly v. Ry. Co., 114 Mass., 496.) This is so in any instance, and the contract stands unless avoided or repudiated. (135 Mass., 367; 122 N. Y., 177; 130 Ill., 162; 61 id., 479; 77 id., 226; 3 So., 351; 60 Pa. St., 290; 21 Pac., 897; 57 Fed., 86; 40 N. Y., Supp., 702; 125 N. Y., 263; 34 O. St., 450; 44 Pac., 333; 14 Mo. App., 27; 2 Pom. Eq. Juris., Secs. 958, 959, 964; Perry on Trusts, Secs. 198, 207, 194–210; 144 N. Y., 333.)

The fact that the company retained possession of Bauman's property, the consideration of which was the assumption of his debts, was conclusive as to ratification of the contract for such assumption made by Bauman. The instruction was erroneous which stated that upon the plaintiff rested the burden of proving that the consideration of the transfer from Bauman to the company was the assumption of his debts to the *satisfaction* of the jury. The burden of proving consideration was not on the plaintiff, and it was not necessary that as to the matters which plaintiff was bound to prove, they should be proven to the *satisfaction* of the jury. (Ry. & Nav. Co. v. Onsley (Wash), 13 Pac., 186; Torrey v. Burney, 21 So., 348; Wolf v. Van Housen, 55 Ill. App., 295; 56 id., 558; Fordice v. Chancey (Tex.), 21 S. W., 181; 16 S. E., 845; 19 N. W., 295; 113 Cal., 467; 30 S. W., 512; 26 id., 885; 37 N. E., 916.)

Although the deed to the real estate contained a covenant warranting against all . claims, the grantor was not estopped from showing by parol evidence that, as a part of the consideration, the grantee agreed to pay the grantor's debts, some of which were represented by mortgages upon the property. (Bolles v. Beach, 22 N. J., L., 680; Nelson v. King, 23 N. J. Eq., 150; 42 Mich., 444; Harris v. Guerin, 27 N. J. Eq., 219; 13 Allen, 168; Preble v. Baldwin, 6 Cush., 549; Becker v. Knudson, (Wis.), 56 N. W., 192; Hays v. Peck (Ind.), 8 N. E., 274; Bowen v. Kurtz, 37 Ia., 239; 1 Jones on Mort., Sec. 750.) Certainly a stranger to the deed is not estopped from showing the facts; and, in this case, plaintiff is a stranger to the deed. (Dempsey v. Kipps, 61 N. Y., 462; Lee v. Adsit, 37 N. Y., 78; Brown v. Thurber, 77 id., 613; 10 Minn., 255; 1 Greenleaf's Ev., 14th ed., 279; Sheephy v. Fulton (Neb.), 57 N. W., 395; Fonda v. Burton (Vt.), 22 Atl., 594; Bruce v. Lumber Co. (Va.), 13 S. E., 153; 62 Ia., 212; 119 Mass., 99; 10 N. H., 359; 3 B. & A., 838; 2 Wharton's Ev., 923, 1040, 1047, 1078; 25 N. H., 425; 92 N. C., 253; 11 Ill. App., 303; 19 La., Ann., 49; 15 id., 579; 7 B. Mon., 589; Pothier on Obligations, Vol. 1, p. 427; 3 B. & A., 838; 50 Md., 351.)

Anyone, though insolvent, may become surety for another, and if it shall become necessary to make the suretyship effectual, he has the right to mortgage his property as security for such debts. (8 O. St., 511; 121 U. S., 310; 101 Ind., 289; 109 id., 514; 117 id., 164; 64 Ia., 175; 34 Kan., 35; 46 id., 335; 32 N. E., 187; 12 S. E., 297; 16 S. W., 124; 52 Ill. App., 471.) A corporation, as against creditors, with the assent of all its shareholders, has the same rights in good faith to secure debts of other persons that an individual has. (113 U. S., 534; 31 Fed., 151; 32 S. W., 300, Md.; 17 So., 528; 18 id., 619; 28 S. W., 286; 56 N. W., 116; 30 Fed., 864; 34 Atl., 316; Conway v. Smith Merc. Co., 6 Wyo., 468.) It is believed, however, that,

in this case, the debts secured are shown to have been the debts of the company.

*M. C. Brown, C. P. Arnold,* and *N. E. Corthell* for defendant in error.

Affirmative error must appear, and can not be presumed. (6 Wyo., 171; id., 123.) The admission of immaterial evidence is not reversible error unless it clearly appears that it has prejudiced or injured the opposite party. (1 Wyo. 284.) And it is due the court that an objection to evidence should be explained and the grounds specified at the time. (2 Wyo., 140.) And a party is not preju diced by the admission of unauthorized or incompetent declarations, where the same facts are brought out by other testimony not objected to, or by evidence of the complaining party's own witnesses. (6 Wyo., 123.) Where there is a substantial or missing link in plaintiff's case, error occurring in the admission or rejection of evidence on other questions in the case can not be held prejudicial. (3 Wyo., 680.) An objection or motion to strike out testimony may be too broad or indefinite. (49 Pac., 478, Wyo.) Where it is clear that the verdict is right, and that a new trial would, under correct instructions, produce the same result, a new trial will not be granted. (3 Wyo., 657.) It is not error to refuse repetition where all that is material in the instructions refused has already been given. (3 Wyo., 120.) Where one is entitled to a peremptory instruction for a verdict in his favor, every rejected request of the adverse party necessarily proposes a 'false issue. (2 Wyo., 108.) Mr. Bauman should, from his position, have given a plausible and consistent account of the contract claimed by him to have been made. (4 Wyo., 5.) To constitute a contract, there must be two or more parties, an adequate consideration, and it must be one not prohibited by law. The minds of the parties must meet, and there must be an offer by one party and an acceptance by the other. (Bish. on Cont. Secs. 250–259; id., Secs. 8, 9, 10,

174; 76 Fed., 654; 83 id., 792; 46 N. Y., 476; 36 id., 307; 3 C. E. Green, 315; 34 Hun., 74.)

Not only was there no contract between Bauman and the company, but there was no consideration for one. Even assuming for the sake of argument that Bauman and the company did attempt to make a contract whereby the company was to assume the payment of $22,705.28 the debts of Bauman, as a consideration in addition to its payment in full for the property by the issue of its stock at its par value, such a contract would necessarily result as the record shows in Bauman getting the stock of the company of the par value of $33,000 for less than $9,000 moneyed consideration, and therefore, if binding on the company, is clearly void as against creditors of the corporation "being inhibited by a sound public policy." (Ins. Co., v. Mfg. Co., 97 Ill., 537; Morawetz on Corporations, Sec. 374; Thompson on Corporations, Secs. 1562–1564; Gates v. Stone Co. (Ohio), 48 N. W., 978; Wetherbee v. Baker, 35 N. J. Eq., 501; Tube Works v. Gilfillan, 134 N. Y., 302; Gilkie v. Town Co. (Neb.), 64 N. W., 978; Malting Co. v. Brewing Co. (Minn.), 67 N. W., 652; Jackson v. Traer (Ia.), 20 N. W., 764; Jewell v. Rock River Paper Co., 101 Ill., 57; Osgood v. King, 42 Ia., 478; Green's Brice's Ultra Vires, Sec. 143.) "Such an agreement will be disregarded, and the party be 'bound to all the responsibilities of a bona fide subscriber.'" (Ins. Co. v. Mfg. Co., 97 Ill., 537; Melvin v. Lamar Ins. Co., 80 Ill., 446; White Mt. R. R. Co. v. Eastman, 34 N. H., 124; Burke v. Smith, 16 Wall, 390; Sawyer v. Hoag, 17 Wall, 610; Noble v. Callender, 20 O. St., 199; Ogilvie v. Ins. Co., 22 How., 380.) The plaintiff, as to the alleged contract, stands in A. M. Bauman's shoes; is subrogated to his rights; burdened with his disabilities; amenable to all the equities between Bauman and the company, its stockholders and its creditors; and her suit is to be viewed in all respects as the suit of A. M. Bauman, seeking to enforce against the creditors of the company the inequitable understanding which he

claims to have had in mind, that the company should pay his debts. (60 N. Y., 282; 24 id., 178; 30 Pac., 609; 27 N. J. Eq., 155; id., 656; 34 id., 52; 11 U. S., 223; 43 Mich. 299; Harris on Subrogation, 1; 67 Mass., 317; 98 U. S., 123.) The case is that of a contract made between the purchaser of mortgaged property, and vendor, whereby the former is said to have agreed to pay the mortgage debt. Bauman was on both sides of the contract. He could not make the agreement gratuitously for his own benefit. If he had promised that the company would pay his debts, it would not be binding upon either stockholders or creditors without their assent. (Meeker v. Iron Co., 17 Fed., 48; 35 Mass., 479; 2 Johns. Ch., 254; 43 N. J. L., 435; 21 Wall., 183; 29 Fed. Cases, 215; 103 U. S., 651; 36 Fed., 215; 103 N. Y., 76; 16 Fed., 16; 45 id., 527; 21 Wall., 230; 40 N. E. (Ill.), 362; 24 Minn., 293; 44 Fed., 233; 31 N. E., 911.)

The agents of a corporation dealing with its property, represent not only the artificial body itself, but its shareholders, its creditors, and, perhaps, others, who are interested in its assets. (Taylor on Corporations, 44, 651; Cole v. Millerton Iron Co., 13 N. Y. S., 852; Bradley v. Eliott, 3 Fed. Cas., 1151; 7 Wall., 279; Higgins v. Lansing (Ill.), 40 N. E., 362; Skinner v. Smith (N. Y.), 31 N. E., 911; Washburn v. Green, 133 U. S., 30; Scoville v. Thayer, 105 U. S., 143; Bliss v. Matteson, 45 N. Y., 26; Koehler v. Hubby, 67 U. S., 722; 45 F., 7.)

A corporation is a trustee, its property a trust fund, and its creditors beneficiaries in such a sense that the fund can not be given away or fraudulently disposed of or in any manner illegally diverted to the injury of the beneficiary. To that extent and in that sense the corporation and its officers represent the creditors, and can not deal adversely with the trust fund. (Cole v. Iron Co., 13 N. Y. S., 852; 39 N. E., 911; 3 Fed. Cases, 1151.) Directors of an insolvent corporation can not use its property to prefer themselves, or for their individual benefit. (Koehler v.

Hubby, 67 U. S., 722; 45 Fed., 7; 44 id., 233; Rhodes
v. Webb, 24 Minn., 293; Olney v. Land Co., 16 R. I.,
597; Graves v. Mono, etc., Co., 81 Cal., 303; Smith v.
Putnam, 61 N. H., 632; Beach v. Miller, 130 Ill., 162;
Bank v. Drake, 29 Kan., 221; 133, U. S., 30; 105 id.,
143; 13 N. Y. S., 852.)

Neither a natural person nor a corporation can create
a legal obligation against himself or itself, where neither a
moral nor a legal obligation previously existed, without
some new and valuable consideration.   Neither an indi-
vidual nor a corporation can give away or otherwise
fraudulently dispose of his or its property, so as to affect
the rights of creditors.

An owner in possession of property is presumed to have
such an interest therein that his declarations against his
own interest may safely be assumed to be true; and ac-
cordingly, they impress themselves upon the title in favor
of those having an adverse interest.   (Scheble v. Jordan,
1 Pac., 121; Stickel v. Bender, 15 id., 580; 164 U. S.,
490; Jones v. Whitmore, 6 Wyo., 220.)   The declara-
tions of Bauman were made while the company had pos-
session of the property.

If an instruction is proper, it matters not what reason
was assigned for it.   (2 Thomp. on Tr., 2404; 25 O. St.,
584.)

While we concede that a deed may be, by appropriate
action, reformed if through fraud or mistake it does not
contain the true agreement between the parties, every
court which enforces the rule that parol evidence is not
admissible to contradict the effect of written instruments
must exclude evidence to show that it was the agreement
of the parties that a covenant against incumbrances was
not intended to extend to a particular incumbrance not
expressly excepted from its operation.   (Rawle on Cove-
nants, 5th ed., p. 112, 113; Devlin on Deeds, 2d ed.,
pp. 914, 915; Greenleaf on Evidence, 275; Suydam v.
Jones, 10 Wend, 180; Hei v. Heller (Wis.), 10 N. W.,
620; Long v. Moler, 5 Ohio St., 272; Webb v. Rice, 6

Hill, 221; Hubbard v. Marshall, 50 Wis., 322; Grice v. Scarborough, 2 Speer Law, 649, S. C.; Batchelder v. Sturgis, 57 Mass., 201; Wadhams v. Innes, 4 Bradw. (Ill.), 642; Follansbee v. Johnson, 28, Minn., 311; Invinson v. Hutton, 3 Wyo., 61.)

It is suggested in the plaintiff's brief that the verdict in this case is not supported by the evidence. We do not care to discuss this proposition, as we think it has been fully covered in the discussion of the other questions. We submit, however, that in the first place, upon the undisputed evidence in the case, the defendant was entitled to a peremptory instruction because of the failure of the plaintiff to establish any valid agreement or any consideration for her mortgages. In the second place, with respect to the fraudulent intent and character of the transaction under which the plaintiff claims, we cite the following general authority: (McKeon v. Allen, 37 Fla., 556; Marmon v. Harwood, 124 Ill., 104; Coleman v. Bunn, 93 N. Y., 31; Roberts v. Buckley, 130 N. Y., 17; Wolf v. Arthur, 118 N. C., 898; Persontte v. Cronkheit, 140 Ind., 586; Culver v. Graham, 3 Wyo., 211; North Platte & Co. v. Price, 4 Wyo., 293; Brewing Co. v. Butchart (Minn.), 69 N. W., 809; Bank v. Mfg. Co. (Wis.), 28, N. W., 225; Herald Co. v. Porter (Ala.), 19 So., 725; Bank v. Guyon (Ala.), 20 So., 520; Johnson v. Whitwell, 24 Mass., 73; Holt v. Creamer, 34 N. J. E., 181; Elser v. Graber (Tex.), 6 S. W., 560; Lukins v. Aird, 6 Wall, 79.)

CORN, JUSTICE.

This is an action of replevin, and the defendant (defendant in error) is the sheriff of Albany County. Defendant had possession of the property, several thousand dollars worth of merchandise, fixtures, etc., under levies of various attachment writs against "The A. M. Bauman Mercantile Company."

For some years prior to 1896, A. M. Bauman was in the grocery business at Laramie. August 18, 1893, he

borrowed from the plaintiff $6,000, and gave her a mortgage on his homestead running three years, as security. Subsequently, he bought a store building for $6,500, borrowed the amount from the plaintiff, and to secure her gave her a mortgage on the building dated May 23, 1894, and running three years. He also owed the First National Bank of Laramie $4,000, and on January 29, 1896, he and the plaintiff executed their note to the bank for the amount, payable in ninety days. . He also owed the Albany County National Bank a note for $2,000, due February 2, 1896, and had other debts, which made his total indebtedness on February 1, 1896, $22,705.28 as shown by his books. His assets, as shown by his books, amounted to $31,667.09. On the last-named date he organized a corporation under the name of A. M. Bauman Mercantile Company, with a capital stock of $33,000, divided into 330 shares. He controlled the entire stock, 300 shares being issued directly to him, 27 shares assigned to his wife, and one share each to three of his employees, who were also made directors. The certificates for the last-named thirty shares were made out, but never signed or delivered. The stock was issued as fully paid. On February 5, 1896, he borrowed for the company $3,000 from the First National Bank of Laramie, and hypothecated 100 of the shares as collateral, afterward turning over another 100 as additional security for this loan. On the same day he executed a bill of sale to the company of all his personal property, ·including the stock of merchandise, store fixtures, etc., the consideration named being $20,500. On the eighth day of the same month he conveyed his real estate by warranty deed to the company, the consideration named being $11,700. Though the real estate was encumbered with mortgages to the amount of $12,500, the deed contained a general warranty against all lawful claims, and both conveyances acknowledged the receipt of the considerations recited. Mr. Bauman, in addition to having control of all the stock of the corporation, and being one of its directors, was president, treasurer and·

general manager, and the by-laws gave him entire control of all its business transactions. On May 2, 1896, the indebtedness of $4,000 to the First National Bank was extended by a new note singed "The A. M. Bauman Mercantile Co., A. M. Bauman, Prestd. and Treasurer," and by the plaintiff. After the incorporation, the company, or Bauman, out of the funds of the company, paid something like $2,500 of his individual debts due to various parties, including interest on the plaintiff's mortgages for $12,500. The corporation, while engaged in business, obtained credit, and at the time of the institution of this suit, was indebted to various parties, including those represented by the defendant sheriff in this action, in about the sum of $4,000. About January 1, 1897, the company was embarrassed and unable to pay its bills as they became due, and was being pressed by some of its creditors. On January 11, in pursuance of a resolution passed by the trustees on that day, the company executed its note to the plaintiff for $9,000, running two years, and also a chattel mortgage securing it on all its stock, fixtures, accounts, and bills receivable. The resolution recited that it was for the purpose of securing her against the $4,000 due the bank, and to give her additional security to the amount of $5,000 of the $12,-500 for which she held mortgages on the real estate, it having depreciated in value. The mortgage was deemed defective in some respects, and a new one was executed and duly filed on January 18. On January 20 possession of the store and the mortgaged property was turned over to the plaintiff under this mortgage, and certain creditors thereupon sued out attachments amounting to more than $4,000 against the company, and the sheriff took possession of the property by virtue of the writs. The plaintiff then retook the property in this action of replevin. The case was tried by a jury, and there was a verdict and judgment for the defendant.

The record is very voluminous, 110 errors being assigned as grounds for a new trial. But in our view of the

case it will not be necessary to consider these assignments in detail.

The pivotal question in the case is whether the plaintiff's chattel mortgage, under which she took possession of all the personal property and effects of the company on January 20, 1897, was a valid lien based upon an actual debt or obligation of the company, as against its existing creditors.   It is shown and not denied that the $4,000 due the bank, and the $12,500, of which the remaining $5,000 of the chattel mortgage is a part, were originally the individual debts of Mr. Bauman.   The primary question, then, is whether they, or either of them, became the debt of the company.   It is true that in a sense Bauman was practically the company.   He owned or controlled all the stock, was given complete control of its operations by the by-laws, and conveyed to it all his property.   But, nevertheless, he and the company were legally two distinct persons, each having the right and power to own property and contract debts, and each bound by its and his own obligations in regard thereto, as fully as if they had been two distinct natural persons.   Schufeldt v. Smith, 139 Mo., 372; The Georgia Company v. Castleberry, 43 Ga., 188; McClellan v. Detroit File Works, 56 Mich., 583.   That the company, therefore, owed Bauman's debts is not to be conclusively presumed, from the fact that though operating under a corporate name, he was, in fact, still conducting the same business which he had owned and operated as an individual; but it is a question of fact to be determined by the evidence.

It is uncontroverted that the only writings which passed between Bauman and the company were a warranty deed for the real estate and a bill of sale of the personal property containing no reservations, delivered by him to the company upon the one hand, and certificates for 330 shares of the capital stock of the company, received by him from the company upon the other hand.   The par value of the shares was $33,000.00, and they were stipulated to be fully paid up.   The consideration expressed

in the deed was $11,700.00, and in the bill of sale $20,500.00, making an aggregate of $32,200.00. So far as the writings are concerned, therefore, I do not think it can be contended that they express or imply any contract upon the part of the company to pay Bauman's individual debts, amounting, as the evidence shows, to more than $22,000. If there was such a contract then upon the part of the company, at the time of the transfer of the property to it, and in consideration of such transfer, it must have been verbal or else implied from all the circumstances of the transaction.

To establish the existence of a verbal contract there must be proof of some expression upon the part of Bauman, and some one representing the company, showing that the minds of the contracting parties, or their agents, met upon the proposition and agreed. There must have been some form of words showing the mutuality which is an essential of every contract. The change in the ownership of the property, and the conduct of the business, from Bauman to the company, is not a mere form to suit the convenience and business purposes of Bauman. It was and must be treated as an actual transfer of the property and business from one individual to another, both having full power under the law to hold property and make contracts, and both bound by the same obligations in regard thereto, as if both were natural persons. In the deed and bill of sale there is no intimation of such a contract; no resolution to that effect appears in the records of the corporation, and it is admitted none was ever adopted; Bauman and Howard both testify that it was never mentioned. There is absolutely no evidence of any express contract of the corporation to pay the debts of Bauman.

But Bauman and Howard, a director, and the bookkeeper of Bauman and also of the company, both testify that it was " understood " that the company was to pay the debts of Bauman. And it is contended by the plaintiff in error that this is not only evidence of the fact, but

that it is ample proof that there was such a contract. Such a statement entirely unchallenged and standing alone might be more or less convincing to a court or jury that such a contract had been made. But both testify upon cross-examination that the subject of the payment of the debts of Bauman by the company was never mentioned ; and Bauman upon being asked the question, "You simply understood that yourself, and nobody else understood anything about it?" answered: "Well, yes, it might be that way; I should say it was never mentioned at all." "Nobody ever spoke of it?"—"No, sir." How Howard reached the conclusion that it was "understood" may perhaps be easily accounted for by the fact that he knew that Bauman did actually pay a large amount of his private debts with the money of the corporation. But it is not competent for a witness to testify that a certain contract was or was not made. He may state what was said or done, and the conclusion is for the jury or the court. The facts, as distinguished from their conclusion, are stated by Bauman and Howard upon their cross-examination. Howard's testimony furnishes no proof whatever of the making of the alleged contract; but upon the contrary seems quite conclusively to show that if any such contract was made, he has no knowledge of the facts by which it is to be made to appear. Bauman's testimony at the utmost only tends to show that it was his own intention to pay his private debts out of the resources of the corporation, for upon cross-examination he admits that, so far as he knows, no one else than himself so understood. Even that it was his intention at the time of the transfer of the property is strongly negatived by other facts in the case. He gave a clean bill of sale of his personal property, and the payment of his debts was not named as part of the consideration. He gave a deed of the real estate, and the payment was not only not named as part of the consideration, but he covenanted with the company against his debt $12,500.00 by which the property was encumbered. But if it be ad-

mitted that this was his intention, such mere unexpressed intentio'n or understanding of Bauman that he would pay his private debts from the resources of the corporation, and this is the utmost the evidence tends to show, falls short in the elements necessary to constitute a contract. A valid contract involves an offer and acceptance, and it must bind both parties. 3 Am. & Eng. Enc., 641. The essentials of a contract are said to be: "A person able to contract, a person able to be contracted with, a thing to be contracted for, a good and sufficient consideration, clear and explicit words to express the contract, the assent of both contracting parties." Beach on Contracts, Sec. 1. "A contract is the meeting of two minds." Id., Sec. 15.

Many authorities are cited by counsel sustaining contracts entered into with corporations by their directors or officers. But we find no case where the mere silent mental operations of one individual claiming to act for himself as the one party and for the corporation as the other have been held to constitute a contract. Referring to some of the cases cited upon this branch of the case, Marsh v. Whitmore, 21 Wall., 178, was a case where bonds belonging to the plaintiff were sold for him by his attorney at public auction, and were bought by third parties for the attorney. In Bassett v. Brown, 10 4Mass., 551, an agent for the sale of land procured a deed to be made to himself, the deed being executed by the principal in person. In Thomas v. Brownsville R. R. Co., 109, U. S., 522, the contest was upon a bill to foreclose a mortgage executed by the company to the plaintiffs, two of whom were directors of the company. In Twin Lick Oil Co. v. Marbury, 91 U. S., 587, the company was embarrassed and a director loaned money to it, taking a deed of trust upon its property to secure the loan. He subsequently bought in the property at public sale under the trust deed. In Pneumatic Gas Co. v. Berry, 113 U. S., 322, the defendant was one of nine directors. The company became embarrassed, he took a lease of its property,

continued the business, paid money for the company, and rescued it from bankruptcy. The court refused to cancel the lease or require the defendant to account for profits. In Leavenworth v. Chi. Ry. Co., 134 U. S., 688, a director purchased property from a third party in alleged violation of his duty to the company. These and like cases are many of them instructive for the purpose for which they were originally cited by counsel, that a contract between a corporation and its officers is not void but voidable. But they do not, as contended in counsel's reply brief, meet the objection that the assent of two persons is required in every contract, and that there is no evidence in this case tending to show such assent.

The evidence leaves no room for any doubt that the Bauman Mercantile Company was insolvent. It was not only being pressed by debts which it was unable to pay, but by its mortgage and the transfer by virtue of it to the plaintiff, it was left without a dollar in money or property except its equities in the real estate. These were valueless. The execution of the mortgage by the company, and the acceptance of it by the plaintiff, under the circumstances shown, was an admission by both of them that the real estate was not sufficient security for the incumbrances upon it by $5,000.

The American courts, following Wood v. Dummer, 3 Mason, 311, have usually held that the capital of a corporation is a trust fund for the payment of its debts. Morawetz on Corporations, Sec., 780; Sanger v. Upton, 91, U. S., 60; Union Ins. Co. v. Frear Stone Manf. Co., 97 Ill., 547; authorities cited; Thompson on Corp., Sec. 2951.

Some of the courts, it is true, have objected to this statement of the law, but it is uniformly held that a corporation can not give away its property or transfer it, unless in good faith for value, if its creditors would thereby be left unsecured. Morawetz on Corp., 789; Hospis v. Northwestern Manf. Co., 48 Minn., 174; Sweeney v. Grape Sugar Co., 30 W. Va., 443; Beach

v. Miller, 130 Ill., 162; Hall v. Goodnight, 138 Mo., 581; Shufeldt v. Smith, 139 Mo., 372. This is precisely what was attempted in this case; to use the entire capital of the company in payment of a private debt of the president which it was under no legal or moral obligation to pay.

In Shufeldt v. Smith, 139 Mo., 372, a partnership composed of three members converted the partnership into a corporation. Subsequently, the company executed a deed of trust, preferring among others, certain debts of the old firm. Other creditors attempted to have the deed set aside upon the ground that these were not debts of the company. The deed was sustained, but upon the specific ground that the evidence, by positive affirmative testimony, showed a verbal agreement that the company was to take all the property of the firm and assume all its debts.

Hall v. Goodnight, 138 Mo., 581, was a case in many of its features similar to the one under consideration. Chamberlain and Terry had been in partnership in the mercantile business. C. bought out T.'s interest in the stock of goods, and gave his note for the purchase price. After continuing the business for a time alone, C. organized a corporation, conveyed to it his property and took all the capital stock. He kept up the organization by making his clerks and employees nominal stockholders of a share each, and for years paid interest on the note out of the proceeds of the same stock of goods. There was a by-law of the company giving him full power of management, and he controlled the entire business, the other stockholders always obeying his wishes. The company sold to Hall and Terry the goods in dispute at the invoice cost price of $8,100, and they paid the amount $3,806 in checks and cash, and the balance ($4,294), by surrendering the Terry note. The court found that Chamberlain intended the note should be satisfied out of the assets of the concern, and Terry was consulted (as one having an equitable interest in the matter) about the incorporation at

the time, and consented to that move.     But the court say:
"The debt due from Mr. Chamberlain to Mr. Terry (being
merely an individual debt for which the company was at
no time either morally or legally bound) could not be
paid from the assets of the corporation, even by consent
of all the stockholders, without committing a fraud on the
then creditors in the circumstances disclosed." In reply
to the contention of plaintiff "that the note represented
the purchase price of the stock of merchandise, and that
the assets of the company were, therefore, still equitably
bound to respond to that obligation," the court say: "It
is clear the stock of goods was turned over to that com-
pany by Mr. Chamberlain for the shares of capital stock
of the company which he received. . . . The merchandise
was paid for (as between Chamberlain and the company)
by its issue of capital stock to him, or by the proceeds
arising from the capital stock.     There is no law or equity
to sanction the paying for it again by the company, in the
manner which plaintiff's argument seeks to justify."
That was a suit in replevin against the sheriff, who had
levied writs of attachment, and a judgment for the defend-
ant was affirmed.

But it is said the payment of some two thousand five
hundred dollars of the debts of Bauman by the company
corroborates the making of the contract, and is a ratifica-
tion of it by the company.     The difficulty is there was
nothing to corroborate and nothing to ratify.     The testi-
mony of Bauman, who knew all the facts, shows that the
company made no such contract at the time of the trans-
fer of his property.     Indeed, when asked what he gave
for the total stock of the company, he answered, "All my
personal property, real estate, and everything." He also
testified that the two papers, the deed and the bill of sale,
expressed his contract with the company.     Neither of
them make any reference to payment of his debts by the
company, but upon the contrary, in his deed he covenants
against the $12,500 secured upon the real estate.     Such

payments clearly do not tend to show anything else than the carrying out of his intention to pay his individual indebtedness out of the resources of the company.

It is further contended that the execution of the note by the company with the plaintiff as surety for $4,000 to the bank, is an assumption of that debt, and makes it a legal and binding obligation of the company. Originally the bank held the personal note of Bauman for this amount, with plaintiff as surety. In May, after the incorporation (and after he had obtained the loan for the company of $3,000 from the bank, one of the attaching creditors in this case), he took up this note, and executed in its place the note of the company, with plaintiff as surety. If the bank were the claimant, by reason of this indebtedness, a different question might be presented. But plaintiff paid off this note, and in doing so she simply paid the debt of Bauman, notwithstanding the form of the paper evidencing the indebtedness. The company received no benefit from the execution of the May note, and there was no injury to the plaintiff. It was a mere extension of the debt of Bauman. As between the plaintiff, Bauman, and the company, the company's note was entirely without consideration. If, as under all the authorities, the officers of a corporation may not give away its capital to the injury of its creditors, it is difficult to see how their act is validated by their naked promise to so waste it or give it away ninety days or six months beforehand. Nor is there any basis whatever for the claim that because Bauman transferred all his property to the company, the plaintiff thereby lost all security for her debt and the assets out of which she might hope to collect it. Bauman conveyed all his property, but received all the stock of the company in exchange. The stock was of the same value as the property at that time, for the company owed no debts. Her debtor being no worse off financially by the exchange, she was not injured.

It is needless to inquire into the many errors assigned, as upon the conceded facts the plaintiff, in our opinion,

was not entitled to a verdict in her favor, and such a verdict could not be sustained by this court. The judgment will be affirmed.

*Affirmed.*

Potter, C. J., and Knight, J., concur.